## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TANAYA FONSECA,

        Plaintiff,

v.

WAYFAIR, LLC

        Defendant.

Case No.

Hon.

_____

ANGELA WALKER (P67625)
KELLY R. MCCLINTOCK (P83198)
BLANCHARD & WALKER, PLLC
*Attorneys for Plaintiff*
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
walker@bwlawonline.com
mcclintock@bwlawonline.com

_____

## COMPLAINT AND JURY DEMAND

Plaintiff, Tanaya Fonseca ("Ms. Fonseca" or "Plaintiff"), by and through her

attorneys, Blanchard & Walker, PLLC, files this Complaint against Defendant

Wayfair, LLC ("Wayfair" or "Defendant"). As more specifically set forth below,

Plaintiff's termination of employment was due to disability discrimination and in

retaliation for taking protected time off for surgery and recovery for a medically

necessary procedure. Ms. Fonseca was fired for pretextual reasons after more than

five years of successful employment at Wayfair, and less than twenty-four hours of returning to work from an approved FMLA leave. Plaintiff seeks all available relief under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.* ("PDCRA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

## PARTIES AND JURISDICTION

1.     This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state claims pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391, as Defendant transacts business and operates in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

3.     Plaintiff Tanaya Fonseca ("Plaintiff" or "Ms. Fonseca") is a female individual residing in Ingham County, Michigan.

4.     Defendant Wayfair, LLC ("Defendant" or "Wayfair") is an online retailer that is headquartered in Boston, Massachusetts, allowing the majority of its workforce to work remotely.

5.     Plaintiff worked out of her home in Ingham County, Michigan.

2

6.     Plaintiff received a Notice of Right to Sue from the Employment Opportunity Commission ("EEOC") on or around April 7, 2026 for her claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

## FACTUAL ALLEGATIONS

7.     Plaintiff Tanaya Fonseca was employed by Defendant Wayfair, LLC from February 3, 2020, to February 21, 2025.

8.     From February 3, 2020, to April 10, 2022, Plaintiff worked as a Large Parcel Support Associate on the Large Parcel Support Springfield team.

9.     From April 10, 2022, to February 21, 2025, Plaintiff was employed as a Service Specialist II for the Supply Chain Operations Excellence (SCOpE) and Customer And Resolutions Experts (CARE).

10.     Throughout her employment with Defendant Wayfair, Plaintiff received good ratings on all performance reviews and was told multiple times that she performed above expectations.

11.     During regular one-on-ones with managers, discussions were primarily about career advancement opportunities, feedback Plaintiff noticed in daily workflows for upper management, and projects that Plaintiff could assist with. Plaintiff regularly contributed to initiatives and pilot programs that were far outside her job description.

12.    Plaintiff received two awards during her tenure with the company, in approximately 2022 and 2025, including the highly prestigious Glass Lamp award, which is only given to one employee per department annually, and the Amethyst Award for customer service.

13.    Management at the Company encouraged and supported Plaintiff to attend Leadership Training opportunities, which Plaintiff successfully completed.

14.    Plaintiff regularly worked overtime hours for the company, with records reflecting over 60 hours of work on a weekly basis for several months, and even weeks Plaintiff worked more than 80 hours on the job.

15.    Plaintiff happily performed overtime work and took pride in the value she added to the company.

16.    Plaintiff suffers from bilateral carpal tunnel syndrome, a physical impairment that substantially limits one or more major life activities, including but not limited to the ability to perform manual tasks.

17.    Plaintiff's condition was exacerbated by the repetitive motions her job required.

18.    Plaintiff disclosed her medical condition to her manager in the first quarter of 2022 and it was periodically discussed in Plaintiff's one-on-one's with management and private Slack channels.

19. On or around January 8, 2025, Plaintiff began approved FMLA leave for treatment of her bilateral carpal tunnel syndrome trigger-finger release on her right dominant hand.

20. Prior to her leave in January 2025, Plaintiff participated in weekly one-on-one meetings with her manager, where her metrics and data regarding calls were reviewed and discussed. No concerns were raised during the meetings in December 2024 and early January 2025.

21. Plaintiff returned to work from FMLA leave on February 20, 2025.

22. Upon her return from FMLA leave, Plaintiff requested accommodations as recommended by her treating physician, consisting of an additional 15-minute work break during her first week back to work.

23. These extra breaks were categorized as intermittent FMLA by the Company and Plaintiff submitted the appropriate paperwork, which was approved by the Company through February 27, 2025.

24. On February 21, 2025, while on approved intermittent FMLA, approximately 24 hours after Plaintiff returned from FMLA leave, Operations Manager Michelle Daniels terminated Plaintiff's employment.

25. Ms. Daniels stated that the reason for Plaintiff's termination was "work avoidance" – specifically that Plaintiff had allegedly incorrectly coded 80 calls as "Miscellaneous/Dropped Call" prior to her FMLA leave.

26.    Upon information and belief, Plaintiff's call data regarding "Miscellaneous/Dropped Calls"  from December 2024 was available well before her FMLA leave, in December 2024 and early January 2025, and normally would have been discussed in her one-on-ones with her manager that had already occurred.

27.    Upon information and belief, the 80 "Miscellaneous/Dropped Calls" was a typical number for Plaintiff to have coded in this way; it was not Plaintiff who terminated the call, and with heavy call volume, it was inevitable that a small percentage of people would disconnect. Defendant provided no guidance as to call coding beyond choosing the "best fit".

28.    There had never been issues with this range of "Miscellaneous/Dropped Calls" in previous months prior to Plaintiff utilizing FMLA.

29.    The alleged conduct forming the basis for Plaintiff's termination occurred, if at all, prior to Plaintiff's FMLA leave, yet Defendants took no adverse action against Plaintiff until immediately after she returned from FMLA leave, and was still utilizing FMLA on an intermittent basis.

30.    Plaintiff believes the company routinely seeks to terminate employees while they are out or just returning from FMLA leave.

31.    Plaintiff believes she was discriminated against on the basis of her disability and in retaliation for utilizing FMLA time.

### Count I – FMLA Retaliation
**(Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*)**

32.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

33.     Plaintiff is an individual and was an "eligible employee" within the meaning of the FMLA at all times relevant to this Complaint.

34.     Defendant was an "employer" within the meaning of the FMLA at all times relevant to this Complaint.

35.     At all relevant times, Plaintiff had a "serious health condition" within the meaning of the FMLA.

36.     Plaintiff engaged in protected activity under the FMLA by requesting leave under the FMLA.

37.     Defendant retaliated against Plaintiff for engaging in protected activity by terminating her employment while Plaintiff was on approved leave under the FMLA.

38.     Defendant's actions were willful and with deliberate disregard for the rights of Plaintiff.

39.     As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

## <u>Count II – Disability Discrimination</u>
**(Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*)**

40.     Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

41.     At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").

42.     Plaintiff has a physical or mental impairment that substantially limits one or more major life activity. Plaintiff's bilateral carpal tunnel syndrome and trigger finger release constitutes a physical impairment that substantially limits one or more major life activities, including but not limited to the ability to perform manual tasks.

43.     Plaintiff was qualified to perform the essential functions of her position with or without reasonable accommodations.

44.     Defendant was aware of Plaintiff's disability.

45.     Defendants subjected Plaintiff to disability discrimination by terminating Plaintiff's employment, failing to provide reasonable accommodations, and retaliating against Plaintiff for taking medical leave due to her disability.

46.     As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

**Count III – Disability Discrimination**
**(Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.*)**

47. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

48. At all relevant times, Plaintiff had a "disability" within the meaning of the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101, *et seq*.

49. Plaintiff has a determinable physical or mental characteristic that limits one or more major life activity.

50. Plaintiff's bilateral carpal tunnel syndrome, as well as trigger-finger in her right hand, constitutes a disability as defined by Michigan law.

51. Plaintiff was otherwise qualified to perform the requirements of her job with reasonable accommodations.

52. Defendant was aware of Plaintiff's disability.

53. Defendants subjected Plaintiff to disability discrimination by terminating Plaintiff's employment, failing to provide reasonable accommodations, and retaliating against Plaintiff for taking medical leave due to her disability.

54. As a result, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, emotional distress, and damage to her health.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Tanaya Fonseca seeks relief from this Honorable Court for all damages sustained, including emotional distress, lost wages (including

back pay, front pay, and loss of benefits), out-of-pocket medical expenses, punitive

damages, exemplary damages, reasonable attorneys' fees, costs, and interest, and all

other relief in law or equity that this Court may deem just and proper.

Respectfully submitted,
BLANCHARD & WALKER, PLLC

/s/ Kelly R. McClintock
Angela L. Walker (P67625)
Kelly R. McClintock (P83198)
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
walker@bwlawonline.com
Dated: July 5, 2026                    mcclintock@bwlawonline.com

10

## DEMAND FOR A JURY TRIAL

Now Comes Plaintiff, Tanaya Fonseca, by and through her attorneys, Blanchard & Walker, PLLC, and hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,
BLANCHARD & WALKER, PLLC

/s/ Kelly R. McClintock
Angela L. Walker (P67625)
Kelly R. McClintock (P83198)
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
walker@bwlawonline.com
Dated: July 5, 2026            mcclintock@bwlawonline.com

11